UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Brenda Nelson and
Brett Nelson,

       Plaintiffs,

v.                                                                              Civil No. 10-3405 (JNE/JJG)
                                                                       ORDER

Faithful Financial, LLC;
Islington Station, LLC;
Lori Grant; and
Griffitts Law Offices, PLLC,

       Defendants.

---

Daniel M. Eaton, Esq., Christensen Law Office PLLC, appeared for Plaintiffs Brenda Nelson and Brett Nelson.

John G. Westrick, Esq., Westrick & McDowall-Nix, PLLP, appeared for Defendants Faithful Financial, LLC; Islington Station, LLC; and Lori Grant.

Michael A. Klutho, Esq., Bassford Remele, A Professional Association, appeared for Defendant Griffitts Law Offices, PLLC.

---

Brenda and Brett Nelson moved for a temporary restraining order (TRO) enjoining Faithful Financial, LLC; Islington Station, LLC; Lori Grant; and Griffitts Law Offices, PLLC, from foreclosing on the Nelsons' Farmington home.[1] At a hearing on August 20, 2010, the Court granted the motion but stayed execution of the TRO until August 25, 2010, to permit Islington Station, Faithful Financial, and Grant (collectively, Islington Defendants) the opportunity to determine whether notice of default was provided to the Nelsons in accordance

---

[1] Griffitts Law Offices took no position on the motion for TRO. [Docket No. 14.]

1

with the terms of the mortgage.[2]  On August 24, 2010, the Islington Defendants submitted an affidavit of an attorney at Griffitts Law Offices indicating that notice of default was sent to the Nelsons via certified mail on November 20, 2009.  For the reasons stated below, the Court vacates the TRO.

## I. BACKGROUND

In December 2001, Wells Fargo Financial Acceptance, Inc., loaned the Nelsons $33,962.46.  The loan was secured by a 1997 Honda Prelude and a short-form mortgage on the Nelsons' home located at 3117 201st Street West, Farmington, Minnesota.  The mortgage required written notice of default:

> The Mortgagee agrees to give Mortgagor written notice of any default under this mortgage or under the Note secured by this mortgage.  The notice will be given by sending it by certified mail to the address of the real estate or to any other address designated in writing by the Mortgagor to the Mortgagee.

The Nelsons failed to make several payments in 2003.  In February 2004, they voluntarily surrendered the Prelude in exchange for a credit to their loan account of $7,981.08.  In June 2004, the Nelsons were served with a Notice of Mortgage Foreclosure Sale notifying them that Islington Station was foreclosing on their home.  The Nelsons assert, based on an account statement from Wells Fargo Financial Acceptance and a 2004 1099-C Cancellation of Debt, that the loan balance was $14,845.00 when Wells Fargo Financial Acceptance assigned the mortgage to Islington Station.  However, the assignment from Wells Fargo Financial Acceptance to Islington Station states that the balance owed as of the date of assignment was $22,794.90.

Brenda Nelson filed for Chapter 13 bankruptcy in September 2004.  During the bankruptcy proceeding, Islington Station submitted a proof of claim for $35,504.05 with an

---

[2]  The Nelsons sought a preliminary injunction in their motion papers.  Due to the expedited nature of the briefing and hearing, the Court treated the motion as a motion for a TRO.

arrearage of $10,309.20 in secured debt. Brenda Nelson did not contest the proof of claim, and the plan confirmed by the bankruptcy court included a secured claim for $10,292.00 by Islington Station. Brenda Nelson paid $10,309.20 to Islington Station within the Chapter 13 plan and an additional $12,171.00 outside of the Chapter 13 plan. Her debts were discharged on February 4, 2008.

Brenda Nelson states in an affidavit that the Nelsons never received a bill, statement, payment demand, or 1098 Mortgage Interest Statement from Islington Station or Faithful Financial. She states that she requested via telephone calls and letters an account balance from Islington Station and its attorney on several occasions between June 2006 and May 2007, but received no response. On May 21, 2007, she sent Islington Station a letter referencing her previous letters, requesting a detailed accounting, and asserting her belief that the loan was paid in full based on the surrender of the Prelude and the Chapter 13 plan payments. She stated that no further payments would be made until she received an accounting. According to Brenda Nelson, she received no response to this letter. The Nelsons made their last payment on June 1, 2007.

On March 26, 2009, Islington Station assigned its interest in the Nelsons' mortgage to Faithful Financial. The assignment was recorded on the same day.

On November 20, 2009, Griffitts Law Offices sent a notice of default and other disclosures required under Minnesota law to the Nelsons via certified mail and first class prepaid mail. The notice of default stated that the Nelsons owed $30,399.96 on the loan and had thirty days to cure their default. The notices sent via certified mail were returned as "UNCLAIMED" and retained by Griffitts Law Offices. The notices sent via first class mail were not returned.

On January 4, 2010, Faithful Financial recorded a Notice of Pendency of Proceeding and Power of Attorney to Foreclose Mortgage. On February 8, 2010, Griffitts Law Offices served on the Nelsons a Notice of Mortgage Foreclosure Sale representing that they owed $31,376.80 on the loan. The Nelsons filed an Affidavit of Postponement pursuant to Minn. Stat. § 580.07 (2008) on March 19, 2010. Accordingly, the sheriff's sale was postponed from April 6, 2010, to September 7, 2010, and the Nelsons have five weeks to redeem after the sale.

On August 10, 2010, six months after receiving notice of the foreclosure, the Nelsons filed this lawsuit alleging violations of the Fair Debt Collection Practices Act and asserting breach of contract, fraud, and other state-law claims. On August 16, 2010, they sought expedited injunctive relief. According to the Nelsons, they paid off their loan on April 1, 2006, and have overpaid by $5,532.03. Those calculations are based on a June 2004 starting balance with Islington Station of $14,845.00. The Islington Defendants respond that the loan balance when the Nelsons stopped paying in June 2007 was $22,496.96 and, due to accrued interest and late fees, had increased to $31,729.13 by August 2010. Their calculations are based on a balance of $33,484.42 in November 2004 and payments totaling $21,873.20 between November 2004 and June 2007.

## II. DISCUSSION

A TRO is an extraordinary remedy. *See Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). The court considers four factors in determining whether a TRO should issue: (1) the threat of irreparable harm to the movant; (2) the state of balance between that harm and the injury that granting the TRO will inflict on the non-movant; (3) the likelihood that the movant will succeed on the merits; and (4) the public interest. *See Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc). A court should determine "whether the balance of

4

equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Id.* at 113. No single factor is determinative. *Id.*

With respect to the likelihood of success, most of the Nelsons' claims are based on the argument that Wells Fargo Financial Acceptance assigned only $14,845.00 in debt to Islington Station in June 2004. The Islington Defendants respond that res judicata bars the Nelsons from denying that they owed Islington Station $35,504.05 in November 2004 because Brenda Nelson did not object to its proof of claim in the bankruptcy proceeding and the arrearage of $10,292.00 was included in the confirmed plan. *See Layo v. First Nat'l Bank of N. New York*, 460 F.3d 289, 292-96 (2d Cir. 2006) (holding that a Chapter 13 bankruptcy confirmation order is res judicata with respect to the debtor's post-confirmation attempt to avoid a confirmed, recorded lien on the debtor's property where the lien was claimed by the creditor and included by the debtor in the plan). The Court concludes that res judicata likely bars the Nelsons from denying that they owed Islington Station $35,504.05 in November 2004, and consequently, they have not shown a likelihood of success on claims that are based on a June 2004 account balance of $14,845.00.

The Nelsons also assert a claim for breach of contract based on an alleged failure of Faithful Financial to comply with the notice requirement in the mortgage. Although the Nelsons contend they never received any such notice, the evidence submitted by the Islington Defendants indicates that Faithful Financial complied with the notice provision. The Court therefore concludes that the Nelsons have not shown a likelihood of success on this breach of contract claim. This factor weighs against a TRO.

The Nelsons contend that they will suffer irreparable harm if the foreclosure is not enjoined because they will lose ownership of their home. The Islington Defendants respond that the Nelsons will not be irreparably harmed because the Minnesota foreclosure statute includes

provisions for setting aside a foreclosure sale and the Nelsons may file a *lis pendens* on the property to prevent a bona fide purchaser for value from taking it. The Islington Defendants also represent that they will not evict the Nelsons or bring an unlawful detainer action during the pendency of this matter. Although the Nelsons may be able to regain ownership of their home after the sheriff's sale, the limited record before the Court indicates that they face a threat of irreparable harm in the absence of injunctive relief. *See O'Hagan v. United States*, 86 F.3d 776, 783 (8th Cir. 1996); *Strangis v. Metro. Bank*, 385 N.W.2d 47, 48 (Minn. Ct. App. 1986); *see also Medin v. Liberty State Bank*, No. C7-90-1549, 1990 WL 152691, at *1 (Minn. Ct. App. Oct. 16, 1990).

The Islington Defendants maintain that they will suffer harm in the form of costs and delay if they have to reinitiate the foreclosure process. When balanced against the threat of irreparable harm faced by the Nelsons, this factor favors a TRO.

Finally, the Nelsons argue that the public interest favors a TRO because the public has a "significant interest in preventing creditors from taking homes that they have no right to take." Based on the Nelsons' failure to show a likelihood of success on the merits of their claims that the loan was paid off and that the Islington Defendants did not comply with the notice requirement in the mortgage, the public interest does not favor a TRO. Rather, a TRO would circumvent the contractual provisions intended to govern default on the loan and Minnesota's statutory foreclosure scheme.

Finally, the Court considers that the Nelsons received notice of the foreclosure in February 2010, postponed the sheriff's sale for five months, and waited six months before seeking expedited injunctive relief shortly before the rescheduled sheriff's sale. *See Lydo Enter., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) ("A delay in seeking a preliminary

provisions for setting aside a foreclosure sale and the Nelsons may file a *lis pendens* on the property to prevent a bona fide purchaser for value from taking it. The Islington Defendants also represent that they will not evict the Nelsons or bring an unlawful detainer action during the pendency of this matter. Although the Nelsons may be able to regain ownership of their home after the sheriff's sale, the limited record before the Court indicates that they face a threat of irreparable harm in the absence of injunctive relief. *See O'Hagan v. United States*, 86 F.3d 776, 783 (8th Cir. 1996); *Strangis v. Metro. Bank*, 385 N.W.2d 47, 48 (Minn. Ct. App. 1986); *see also Medin v. Liberty State Bank*, No. C7-90-1549, 1990 WL 152691, at *1 (Minn. Ct. App. Oct. 16, 1990).

The Islington Defendants maintain that they will suffer harm in the form of costs and delay if they have to reinitiate the foreclosure process. When balanced against the threat of irreparable harm faced by the Nelsons, this factor favors a TRO.

Finally, the Nelsons argue that the public interest favors a TRO because the public has a "significant interest in preventing creditors from taking homes that they have no right to take." Based on the Nelsons' failure to show a likelihood of success on the merits of their claims that the loan was paid off and that the Islington Defendants did not comply with the notice requirement in the mortgage, the public interest does not favor a TRO. Rather, a TRO would circumvent the contractual provisions intended to govern default on the loan and Minnesota's statutory foreclosure scheme.

Finally, the Court considers that the Nelsons received notice of the foreclosure in February 2010, postponed the sheriff's sale for five months, and waited six months before seeking expedited injunctive relief shortly before the rescheduled sheriff's sale. *See Lydo Enter., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) ("A delay in seeking a preliminary

provisions for setting aside a foreclosure sale and the Nelsons may file a *lis pendens* on the property to prevent a bona fide purchaser for value from taking it. The Islington Defendants also represent that they will not evict the Nelsons or bring an unlawful detainer action during the pendency of this matter. Although the Nelsons may be able to regain ownership of their home after the sheriff's sale, the limited record before the Court indicates that they face a threat of irreparable harm in the absence of injunctive relief. *See O'Hagan v. United States*, 86 F.3d 776, 783 (8th Cir. 1996); *Strangis v. Metro. Bank*, 385 N.W.2d 47, 48 (Minn. Ct. App. 1986); *see also Medin v. Liberty State Bank*, No. C7-90-1549, 1990 WL 152691, at *1 (Minn. Ct. App. Oct. 16, 1990).

The Islington Defendants maintain that they will suffer harm in the form of costs and delay if they have to reinitiate the foreclosure process. When balanced against the threat of irreparable harm faced by the Nelsons, this factor favors a TRO.

Finally, the Nelsons argue that the public interest favors a TRO because the public has a "significant interest in preventing creditors from taking homes that they have no right to take." Based on the Nelsons' failure to show a likelihood of success on the merits of their claims that the loan was paid off and that the Islington Defendants did not comply with the notice requirement in the mortgage, the public interest does not favor a TRO. Rather, a TRO would circumvent the contractual provisions intended to govern default on the loan and Minnesota's statutory foreclosure scheme.

Finally, the Court considers that the Nelsons received notice of the foreclosure in February 2010, postponed the sheriff's sale for five months, and waited six months before seeking expedited injunctive relief shortly before the rescheduled sheriff's sale. *See Lydo Enter., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) ("A delay in seeking a preliminary

injunction is a factor to be considered in weighing the propriety of relief."). Based on its analysis of the relevant factors, the Court concludes that equity does not favor a TRO and therefore vacates the TRO entered on August 20, 2010.

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. The TRO entered on August 20, 2010 [Docket No. 17] is VACATED.

Dated: August 25, 2010

                                              s/ Joan N. Ericksen
                                              JOAN N. ERICKSEN
                                              United States District Judge